**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**EDWIN M.**

|  |  |  |
|---|---|---|
| | **Plaintiff,** | **6:22-CV-6519 Sr** |
| **v.** | | |

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all

proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #15.

## BACKGROUND

Plaintiff applied for disability and supplemental security income ("SSI"),

benefits with the Social Security Administration ("SSA"), on December 22, 2015,

alleging disability beginning August 6, 2014, at the age of 48, due to lumbar disc

disease, depression, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"),

migraine headaches, high blood pressure, and gastroesophageal reflux disease

("GERD"). Dkt. #4-3, p.27.

On March 2, 2018, plaintiff appeared with counsel, along with vocational expert ("VE"), Whitney Eng, and testified before Administrative Law Judge ("ALJ"), Erik Eklund. Dkt. #4-2, pp.119-149. Plaintiff testified that he was married and lived in a house with his wife and child. Dkt. #4-2. pp.123 & 135. His son does all the heavy chores like mowing the lawn, mopping the floors, taking the dogs for walks and carrying laundry. Dkt. #4-2, pp.141-142. His wife does the grocery shopping and cooking. Dkt. #4-2, p.136. He will sometimes dust or fold clothes while sitting. Dkt. #4-2, pp.135-146.

Plaintiff has a GED. Dkt. #4-2, p.124. He was working part-time but cannot work full-time because of his chronic back problem. Dkt. #4-2, pp.125-127. He testified that he worked for an apparel company picking orders. Dkt. #4-2, p.125. They are very flexible with his schedule and understand that he calls off at least one day per week. Dkt. #4-2, p.141. He is able to sit whenever he needs to. Dkt. #4-2, pp.125-126. Prior to that job, he was working part-time at Home Depot, but couldn't continue because they were asking him to lift more than he was able to lift. Dkt. #4-2, p.140. He has tried physical therapy, aquatics and acupuncture without relief. Dkt. #4-2, p.128. He received immediate relief from black radio frequency ablation, but the pain returned as soon as he started moving around. Dkt. #4-2, p.129. He also testified that he has limited use of his left arm following a rotator cuff injury and labrum tear in 2007. Dkt. #4-2, pp.130-131. He is prescribed psychotropic medication for bipolar disorder, anxiety disorder, schizophrenia and ADHD. Dkt. #4-2, p.132. His thoughts are constantly racing; he can never focus on one thing; his mind is always going elsewhere. Dkt. #4-2, p.132. He can't stand still. Dkt. #4-2, p.134.

-2-

The VE classified plaintiff's past relevant work as a hand packager, which was classified as an unskilled, medium exertion position, but was performed by plaintiff at the light exertion level. Dkt. #4-2, p.144. When asked to assume an individual with plaintiff's age, education and work experience who could never crawl or climb ladders, ropes or scaffolds and could occasionally balance, stoop, crouch, kneel, climb stairs or navigate ramps and occasionally reach overhead with the left upper extremity, who was limited to simple, unskilled work with only occasional contact with the public and co-workers, the VE testified that such an individual would not be able to perform plaintiff's past relevant work, but could work as a retail marker, assembler, or linen grader, each of which were unskilled, light exertion jobs. Dkt. #4-2, pp.143-144. When asked to assume that individual was limited to sedentary work and could stand and walk for no more than 4 hours in a day, the VE testified that such an individual could work as an addressing clerk, document preparer, or cutter and paster of press clippings, each of which were unskilled sedentary positions. Dkt. #4-2, pp.146-147. The VE testified that the maximum that an individual could be absent was one day per month and the maximum time off-task would be 10% of an 8-hour workday. Dkt. #4-2, pp.148.

ALJ Eklund issued an unfavorable decision on May 16, 2018, determining that although plaintiff suffered from status post left rotator cuff repair, lumbar degenerative disc disease, chronic bronchitis, depression, bipolar disorder, anxiety disorder and ADHD, he was capable of performing simple unskilled work at the light exertion level with no more than occasional contact with the public and coworkers. Dkt.#4-3, pp.95-107. The Appeals Council vacated the decision on May 30, 2019 for

further consideration of the opinion of Robert L. Smith, M.D., as well as a third party statement from Sandie Case at Unity Employment Services. Dkt. #4-3, pp.114-115.

On November 14, 2019, plaintiff and his spouse appeared with counsel, along with vocational expert ("VE"), Sakinah Malik, and testified before ALJ Brian Kane. Dkt. #4-2, pp.60-118. Plaintiff's representative advised that plaintiff was amending his alleged onset date to January 27, 2016, plaintiff's 50th birthday, arguing that plaintiff would be disabled according to the medical vocational grids as of that date based upon Dr. Smith's medical source opinion effectively limiting plaintiff to sedentary work. Dkt. #4-2, pp.64-66. Plaintiff testified that he had been working as an order picker, using a motorized vehicle to drive to the merchandise and bring it to the shipping area. Dkt. #4-2, pp.69-70. However, Dr. Morris took plaintiff out of work on May 20, 2019 because plaintiff had been experiencing a lot of pain for four months. Dkt. #4-2, p.71. He had been missing four-five work days per month during this time due to pain in his hip and back. Dkt. #4-2, pp.77-79. Plaintiff had received an injection from Dr. Patel and was feeling good, but experienced pain when he tried to mow the lawn. Dkt. #4-2, pp.72-75 & 114-118.

The VE testified that plaintiff's past relevant work as a hand packager was listed as a medium exertion position, but performed by plaintiff at the light exertion level. Dkt. #4-2, p.85. Plaintiff's past relevant work could also be classified as an order filler, which is a semi-skilled, light exertion position, and as a greeter and sales attendant, each of which are unskilled, light exertion positions. Dkt. #4-2, pp.85-86.

On December 6, 2019, ALJ Kane issued a partially favorable decision, determining that plaintiff suffered from status post left rotator cuff repair and lumbar degenerative disc disease and was disabled as of February 1, 2019, but prior to that date, plaintiff was capable of light work, including lifting and carrying up to 10 pounds, standing and walking up to six hours and sitting for up to six hours in an eight-hour day. Dkt. #4-3, pp.117-134. More specifically, ALJ Kane determined that, prior to February 1, 2019, plaintiff was capable of performing past relevant work as an order filler, greeter, and sales attendant. Dkt. #4-3, p.132.

The Appeals Council vacated the decision on October 13, 2020. Dkt. #4-3, pp.146-152. The Appeals Council instructed the ALJ to address numerous issues, including: (1) the failure to address postural, reaching and environmental limitations indicated by Dr. McWatters after determining that his opinion was entitled to great weight; (2) the failure to address postural limitations indicated by consultative examiner Harbinder Toor, M.D., after determining that his opinion was entitled to partial weight; (3) the failure to explain how the ALJ found plaintiff's mental impairments non-severe despite finding the opinions of Dr. Diaz and consultative examiner Brownfield entitled to some weight; (4) explanation of the weight afforded to the third party statement from Sandie Case, Employment Services Coordinator at Unity Employment Services; (5) the rationale for the onset of disability date; and (6) clarification as to whether the jobs identified by ALJ Kane were performed at the earnings threshold to be considered past relevant work. Dkt. #4-2, pp.148-152.

On April 16, 2021, plaintiff appeared with counsel at an administrative hearing conducted by telephone before ALJ Brian Kane. Dkt. #4-2, pp.52- Plaintiff's representative advised the ALJ that based upon Dr. Smith's medical source opinion restricting plaintiff to sedentary exertion, the medical vocational grid would support a finding of disability as of January 27, 2016, when plaintiff turned 50. Dkt. #4-2, p.57. The ALJ noted that the Appeals Council vacated the prior decision, including the favorable finding of disability as of February 1, 2019, and warned plaintiff that there was a possibility that the evidence might not support a disability finding, which could require repayment of the benefits plaintiff had received. Dkt. #4-2, p.58. As a result, it was agreed to reschedule the hearing to afford plaintiff additional time to prepare. Dkt. #4-2, pp.58-59.

On August 13, 2021, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Helene Feldman, at an administrative hearing conducted by telephone before ALJ Kane. Dkt. #4-2, pp.32-49. Plaintiff's representative reiterated that plaintiff was asking ALJ Kane to consider an onset date of January 27, 2016, when plaintiff turned 50, which would permit an award of benefits based upon the medical source opinion from Dr. Smith supporting a sedentary RFC. Dkt. #4-2, pp.37 & 46-47. Plaintiff testified that between January 27, 2016 and February 1, 2019, he was working part-time, but would call in sick at least once or twice a week because of migraines. Dkt. #4-2, p.47. He also testified that his back started getting worse and worse from standing on the concrete floor. Dkt. #4-2, p.47. Dr. Smith took plaintiff out of work because he aggravated his back in May of 2019. Dkt. #4-2, p.47. Plaintiff

reiterated that he had been working part-time with restrictions until May of 2019 and that his condition has gotten worse since that time and he isn't able to stand for long periods of time. Dkt. #4-2, pp.39-40.

When asked to assume an individual who could perform a range of light work and could lift and carry up to 10 pounds and stand and walk for up to six hours in an eight hour day and sit for up to six hours in an eight hour day, the VE testified that plaintiff could continue to perform his past work as a hand packager, filler and greeter/checker. Dkt. #4-2, pp.44-45.

The ALJ rendered a decision that plaintiff was not disabled on September 1, 2021. Dkt. #4-2, pp.11-23. More specifically, the ALJ determined that: (1) although plaintiff worked part time as an order filler until May, 2019, plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 27, 2016; (2) plaintiff's status post left rotator cuff repair and lumbar degenerative disc disease constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work except that he can lift and carry up to ten pounds, stand and walk up to six hours, and sit for up to six hours in an eight-hour day; and (5) plaintiff was capable of performing his past relevant work as a hand packager, a position he performed at the light exertion level above the threshold for substantial gainful activity in 2008 and 2009, and was not, therefore, disabled within the meaning of the SSA. Dkt. #4-2, pp.14-23.

The Appeals Council denied review on September 23, 2022. Dkt. #4-2, p.2. Plaintiff commenced this action seeking review of the Commissioner's final decision on November 21, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of

the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

Plaintiff argues that the ALJ failed to failed to follow the directives of the Appeals Council on remand and contradicted his prior determination that plaintiff was limited to sedentary work with additional nonexertional limitations and therefore disabled as of February 1, 2019. Dkt. #9-1, pp.13-14. Plaintiff also argues that the ALJ credited numerous medical source opinions that contained greater limitations than the RFC; failed to consider that plaintiff was prescribed a cane for ambulation; and improperly relied upon plaintiff's part-time work, which was done within the limitations set by his medical provider and with ongoing vocational supports, to infer that plaintiff

could work on a full-time basis. Dkt. #9-1, pp.14-15 & 20. Finally, plaintiff argues that the ALJ mischaracterized the evidence regarding plaintiff's mental impairments, resulting in an erroneous determination that plaintiff's mental impairments are nonsevere.  Dkt. #9-1, pp.25-30. Given that the Commissioner has had three opportunities to apply the correct legal standards, plaintiff requests remand for calculation of benefits. Dkt. #9-1, p.15.

The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence; the ALJ's rationale for declining to afford controlling weight to the medical source opinions from Dr. Smith was sufficient; and the district court should not reweigh the evidence of record. Dkt. #12-1, pp.7-12. The Commissioner also argues that plaintiff has not demonstrated that his use of a cane was medically necessary, noting medical records observing normal gait. Dkt. #12-1, p.13. With respect to mental limitations, the Commissioner argues that the ALJ's assessment of no more than mild limitations in any functional area was supported by substantial evidence, warranting a determination that plaintiff's mental impairments were non-severe. Dkt. #12-1, pp.14-18. In any event, the Commissioner notes that the ALJ considered medical evidence relating to plaintiff's mental limitations in assessing plaintiff's RFC, rendering any error at step two harmless. Dkt. #12-1, pp.19-20. Finally, the Commissioner argues that if the Court declines to affirm the decision, remand for calculation of benefits is not appropriate because the evidence of record does not provide persuasive proof of disability. Dkt. #12-1, pp.20-21.

Plaintiff replies that the ALJ did not comply with the treating physician rule in assessing Dr. Smith's opinion and argues that Dr. Smith's opinion should have been afforded controlling weight as of the alleged onset date. Dkt. #13, p.1. Contrary to the ALJ's decision, plaintiff argues that Dr. Smith's opinions were consistent with and supported by the treatment notes of specialists and relevant diagnostic images and the ALJ failed to provide sufficient reasons for discounting them. Dkt. #13, pp.3-5. Plaintiff argues that the ALJ improperly substituted his own lay opinion of the treatment record for that of plaintiff's long-time care provider. Dkt. #13, pp.5-6. For example, plaintiff argues that the ALJ improperly characterized plaintiff's care as conservative and failed to explain how plaintiff's part-time employment, within the parameters set by Dr. Smith, undercut Dr. Smith's opinion. Dkt. #13, pp.6-7. Finally, plaintiff argues that the ALJ failed to comply with the directive of the Appeals Council to consider the impact of services provided by Ms. Case to plaintiff's mental RFC or to explain the inconsistency between the ALJ's mental RFC and the opinions of agency consultants and mental status examinations by plaintiff's mental health provider. Dkt. #13, pp.7-9.

Prior Decisions

As set forth in 42 U.S.C. § 405(g), a federal court lacks jurisdiction to review social security benefit determinations until a "final decision of the Commissioner" has been issued. *Iwachiw v. Massanari*, 125 Fed. App'x 33, 331 (2d Cir. 2005). The Commissioner's decision does not become final until the Appeals Council has denied review or decided the case after review. *Id.* Where, as here, the ALJ's partially favorable decision was vacated by the Appeals Council, it is no longer in effect and

cannot be reviewed by the district court. *Thompson v. Astrue*, 583 F. Supp.2d 472, 476 (S.D.N.Y. 2008). Therefore, while it is certainly unfortunate that plaintiff's effort to appeal a partially favorable decision ultimately resulted in a completely unfavorable decision, the governing regulations provided unequivocal notice that the entire decision could be reviewed following a remand by the Appeals Council and such a result has been upheld by other courts confronting the analogous situation of appeals of partially favorable ALJ decisions to the Appeals Council. *Id.; See Jody L. v. Comm'r of Soc. Sec.,* 21-CV-734, 2022 WL 1541461, at *4 (district court lacked jurisdiction to review partially favorable decision limiting plaintiff to sedentary work or decision by the Appeals Council vacating that decision; it could only review subsequent unfavorable decision limiting plaintiff to light work which was denied review by Appeals Council); *Uffre v. Astrue,* 06 Civ. 7755, 2008 WL 1792436, at * 7 (S.D.N.Y. April 18, 2008) (ALJ's initial decision that plaintiff was capable only of sedentary work has no bearing because ALJ making decision in a case on remand from the Appeals Council is to consider the case *de novo*). Accordingly, the prior determination of partial disability is not relevant to the instant proceeding.

Physical RFC

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources or non medical sources, with consideration of the following factors for determining the appropriate weight to

afford such opinions: (1) the frequency of examination; (2) the length, nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011); *See* 20 C.F.R. § 404.1527 (f)(2). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See. Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record, but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). While the

ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to his application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus, when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022).

In the instant case, plaintiff's primary care provider, Robert Smith, M.D., provided three medical source opinions regarding plaintiff's physical functional capacity. On January 8, 2016, the same month as plaintiff's amended alleged onset date, Dr. Smith completed a lumbar spine medical source opinion questionnaire indicating that he had treated plaintiff since 2008. Dkt. #5-1, p.740. Dr. Smith diagnosed plaintiff with low back pain and lumbar disc disease, noting degenerative disc disease at L3-4, L4-5 and L5-S1 and reported facet joint injection treatment in May of 2014 and left lumbar radio frequency ablation in December of 2015. Dkt. #5-1, p.740. Dr. Smith also noted positive straight leg raise at 180 degrees bilaterally. Dkt. #5-1, p.741. Dr. Smith opined that plaintiff could sit at least six hours and stand and walk about 4 hours in an 8-hour workday and would need to be able to shift positions at will and take hourly unscheduled breaks during the workday. Dkt. #5-1, p.742. He could only lift 10 pounds occasionally. Dkt. #5-1, p.743. Dr. Smith opined that plaintiff would be absent from work

approximately 4 days per month. Dkt. #5-1, p.743. He also opined that emotional

factors contributed to the severity of plaintiff's symptoms and functional limitations. Dkt.

#5-1, p.741.

On April 27, 2018, Dr. Smith completed a physical medical source opinion

noting plaintiff's degenerative disc disease at L4-5 and L5-S1 would limit him to lifting

no more than 10 pounds occasionally and 20 pounds rarely, with no more than

occasional twisting, stooping, crouching, squatting and climbing of stairs. Dkt. #5-1,

p.745. He was able to sit and stand or walk less than 2 hours in an 8-hour workday.

Dkt. #5-1, p.746. Dr. Smith estimated that plaintiff would be absent from work

approximately 2 days per month due to his impairments or treatment. Dkt. #5-1, p.746.

On September 26, 2019, Dr. Smith completed a physical medical source

opinion form opining that plaintiff could not lift 10 pounds and could sit and stand or

walk less than 2 hours in an 8-hour day due to his lumbar disc disease and

osteoarthritis of hips, bilaterally. Dkt. #5-1, p.817.

The ALJ afforded "little weight to the grossly contrary opinions of treating

source Robert L. Smith, M.D." Dkt. #4-2, p.21. While acknowledging the lengthy

treatment relationship, the ALJ noted that Dr. Smith was "only a primary care source

and thus lacks the particularized knowledge or experience of a specialist." Dkt. #4-2,

p.21. The ALJ also found it persuasive that Dr. Smith's opinion restricting plaintiff "to a

very limited range of part-time work less than four hours total per day [was] inconsistent

with the [plaintiff's] demonstrated ability to work part-time . . . during the period at issue, with annual earnings just below the level of substantial gainful activity." Dkt. #4-2, p.21. The ALJ also explained that although plaintiff reported disability due to his continued back pain, "his entire course of treatment has been conservative and he typically demonstrates only mild to moderate findings on objective physical examination." Dkt. #4-2, p.21. Furthermore, the ALJ indicated that Dr. Smith's opinions fail to cite to significant objective markers or findings that support his extreme restrictions." Dkt. #4-2, p.21.

Plaintiff underwent a consultative internal medicine evaluation by Harbinder Toor, M.D. on February 10, 2016. Dkt. #5-1, pp.120-123. Dr. Toor observed that plaintiff was in moderate pain, but demonstrated normal gait and was able to walk on heels and toes without difficulty. Dkt. #5-1, p.121. His squat was 50%. Dkt. #5-1, p.121. Although he was able to rise from a chair without difficulty, plaintiff demonstrated difficulty getting on and off the examination table. Dkt. #5-1, p.121. Dr. Toor observed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally in the cervical spine. Dkt. #5-1, p.122. In the lumbar spine, Dr. Toor observed forward flexion 30 degrees, extension 0 degrees, lateral flexion and lateral rotation bilaterally 30 degrees, and positive SLR both sitting and supine bilaterally at 20 degrees. Dkt. #5-1, pp.122. Dr. Toor opined that plaintiff would have moderate limitation standing, walking and sitting a long time, as well as moderate to marked limitation bending or lifting. Dkt. #5-1, p.123.

The ALJ afforded Dr. Toor's opinion little weight because his opinion regarding postural limitations was inconsistent with plaintiff's work as an order filler, as well as "primary care records showing good control of his chronic low back pain despite limited medical treatment." Dkt. #4-2, p.21. In support of this assertion, however, the ALJ cites primary care records from September 26, 2019 and beyond noting, *inter alia*, complaints of lower back pain which increased with prolonged activity; reduction in pain after aquatic therapy; left hip pain; intent to consult with neurosurgeon; and the observation that plaintiff used a standard cane to ambulate. Dkt. #5-1, pp.846, 853, 861, 870, 873.

By unsigned letter dated August 7, 2017, the Huther Health Clinic advised that plaintiff was being treated for back pain by Dr. Herbert and was currently "unable to stand for long periods of time, cannot lift anything over 20 lbs, and needs to have his work hours restricted to nor more than 17 hours per week." Dkt. #5-1, p.290. The ALJ afforded this opinion no weight because it lacked attribution and failed to provide with specificity the maximum the plaintiff could do despite his impairments and only appear to speak to short-term limitations. Dkt. #4-2, p.21.

On April 5, 2018, state agency medical consultant J McWatters, M.D., opined that plaintiff could occasionally lift a maximum of 20 pounds and frequently lift 10 pounds and could sit and stand or walk for about 6 hours in an 8-hour workday. Dkt. #5-1, p.733. the ALJ afforded Dr. Watters' opinion partial weight because of his expertise and his ability to review the evidence of record, but determined that plaintiff's

ability to work part-time as an order filler from his amended alleged onset date until May 2019 demonstrates that the plaintiff "had no significant environmental, postural, or reaching limitations." Dkt. #4-2, p.20. The ALJ noted that although Dr. McWatters' opinion limiting plaintiff to light exertion was consistent with subsequent primary care records, the ALJ had "further limited his ability to lift and carry based on his testimony at the hearing regarding the extent of his chronic pain." Dkt. #4-2, p.20.

On October 30, 2018, plaintiff underwent an MRI of the lumbar spine, revealing a small annular tear and shallow broad-based disc protrusion/herniation in the left lateral recess and inferior left neural foramen, minimal ventral thecal sac deformity on the left, slight lateral recess stenosis on the left, and mild left foraminal narrowing at L2-L3; mild diffuse annular bugling, small annular tear in the left lateral recess and medial left neural foramen without focal soft disc protrusion/herniation, and minor foraminal narrowing bilaterally at L4-L5; and mild modic reactive endplate changes, mild diffuse annular bulging and focal annular tear in the left lateral recess without focal soft disc protrusion/herniation, and moderate facet arthopathy at L5-S1. Dkt. #5-1, p.747.

On May 22, 2019, an MRI of plaintiff's left hip revealed abnormal bone marrow edema within the left superior acetabulum concerning for stress-related injury of stress fracture; mild gluteus medius insertional tendinopathy; and mild to moderate osteoarthritis of both hips. Dkt. #5-1, pp.811-812.

The ALJ's assessment of Dr. Smith's opinions are not supported by substantial evidence. As an initial matter, Dr. Smith's opinions are not grossly contrary, but demonstrate consistent restrictions on plaintiff's ability to lift and decreasing capacity for sitting and standing over time given plaintiff's deteriorating physical condition. Moreover, while the ALJ is correct that Dr. Smith is not a specialist, his opinions acknowledge, incorporate, and are consistent with treatment records of specialists and objective diagnostic tests he was provided during the relevant time periods. On January 5, 2016, for example, plaintiff's pain management specialist, Leonid Vilensky, M.D., observed upon examination muscle spasm in the left paravertebral muscles of the lumbar spine; limited flexion and extension of the lumbar spine; limited lateral bending of the lumbar spine; positive Laseque's test for lower back pain; difficulty walking on toes and heels; and limited left shoulder range of motion secondary to pain/painful with palpation. Dkt. #5-1, p.268. As Dr. Smith indicated, Dr. Vilensky had performed a left lumbar facet medial branck diagnostic block and left sided radio frequency ablation prior to the first medical source opinion statement. Dkt. #5-1, pp.33-34, 38-39, 43-44 & 68-69. Moreover, although subsequent to the second medical source statement, plaintiff's MRI of the lumbar spine conducted on October 30, 2018 provides an objective diagnosis of plaintiff's physical impairments. Finally, the Court agrees with plaintiff that there is no evidence in the record that plaintiff's part-time employment exceeded the restrictions set forth by his medical providers. Moreover, the record is clear that plaintiff's part-time work has been supported by Unity House, an organization that provides vocational training and support to individuals with disabilities, throughout the relevant time period. Dkt. #5, p.77.

Because the Court's determination regarding the erroneous assessment of Dr. Smith's medical source opinions may be dispositive on remand, the Court declines to address plaintiff's arguments regarding the ALJ's assessment of plaintiff's mental impairments. *See Fambo v. Comm'r of Soc. Sec.*, 474 F. Supp.3d at 608-609 (declining to reach additional arguments where it has been determined that remand for further administrative proceedings are necessary).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9), is granted and the matter is remanded for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:     Buffalo, New York**
**           March 31, 2026**

                                         s/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**